IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**EILEEN F. IRWIN,**

        Plaintiff,

        v.

**CAROLYN W. COLVIN,**
Acting Commissioner of the Social Security
Administration,

        Defendant.

**Civ. No. 6:13-cv-01927-MC**

**OPINION AND ORDER**

---

MCSHANE, Judge:

Plaintiff Eileen Irwin brings this action pursuant to 42 U.S.C. § 405(g), to obtain judicial

review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for

Social Security Disability insurance benefits pursuant to 42 U.S.C. §§ 416 and 423. Plaintiff

seeks an Order reversing the decision of the Commissioner and remanding the action to the

Social Security Administration for an award of benefits.

For the following reasons, the Commissioner's decision is **REVERSED** and remanded

for a finding of disabled and for payment of benefits.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff, Ms. Eileen Irwin, filed an application for SSDI benefits on 2/18/11 (Tr. 132-33). The application was denied, after which Plaintiff requested a hearing before an administrative law judge (ALJ) of the Social Security Administration. On 8/23/12, after a hearing held before ALJ John Molleur, a decision was issued finding Plaintiff not disabled. (Tr. 9-19). Plaintiff timely requested Appeals Council review of the ALJ's decision, but by letter dated 8/29/13, the Appeals Council declined to grant the request for review. (Tr. 1-6). This action resulted in the ALJ's 8/23/12 decision becoming the final order of the agency from which Plaintiff now appeals to this Court.

Plaintiff alleges disability beginning 12/12/09 (Tr. 31, 132) based on a combination of impairments, including intractable migraines, status-post acromioclavicular separation of the left shoulder, and degenerative disc disease at C4-5, C5-6, and C6-7 with tiny osteophytes and slight joint space loss. (Tr. 261). Plaintiff has suffered from daily unremitting headaches for years, with nausea, vomiting, diarrhea, photophobia, phonophobia, and osmophobia. Virtually any activity could trigger a headache. (Tr. 405). Plaintiff tried multiple medications, physical therapy, biofeedback, and cognitive behavioral therapy. At times, Plaintiff has been bedridden and incapacitated from these headaches for up to six weeks at a time. (Tr. 48 and [#9 at p. 3]).

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423 (d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

2 – OPINION AND ORDER

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v.*

*Commissioner*, 648 F.3d 721, 724 (9th Cir. 2011). The five steps proceed as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one or more of the specific impairments described in 20 C.F.R. Pt. 404, Subpart. P, App. 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the burden of proof for the first four steps in the process. *Bustamante v. Massanari,* 262 F.3d 949, 953 (9th Cir. 2001); see also *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); see also 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, then the claimant is disabled. If, however, the Commissioner proves that the claimant is able to perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. *Bustamante v. Massanari,* 262 F.3d at 953-54.

3 – OPINION AND ORDER

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## DISCUSSION

The plaintiff argues that the Commissioner's final decision is not supported by substantial evidence and is not based on the application of proper legal standards. [#9 at p. 9]. Specifically, the plaintiff argues the ALJ erred by improperly discounting and interpreting the remarks of several of the plaintiff's treating physicians, and by rejecting the plaintiff's own testimony and the lay witness testimony of her husband. This court agrees.

It is clearly established that an ALJ may only disregard the controverted opinion of treating physicians by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. *Connett v. Barnhart,* 340 F.3d, 871, 874 (9th Cir. 2003). This court is unable to locate the substantial evidence required for discrediting the opinions of the plaintiff's many treating physicians over the years beginning in 2007. (Tr. 261). Instead, what is found is a generalized finding by the ALJ that, "the intermittent nature of the claimant's treatment for her headache, neck, and shoulder pain, along with the inconsistent reporting of alleged symptoms of nausea and vomiting, erodes the credibility of the subjective allegations and testimony from the claimant and her husband, which is accorded little weight." (Tr. 18). Such a finding does not suffice for substantial evidence. In any event, this blanket statement is

4 – OPINION AND ORDER

inconsistent with the actual record. Most of the plaintiff's treating physicians *do* in fact note plaintiff's symptoms with regularity and uniformity. Specifically, Dr. Roger Allen noted on 4/11/08 that Plaintiff had pain and muscle spasms in her neck and left shoulder, as well as constant headaches. (Tr. 236). He notes the headaches again on 5/21/08 and 7/8/08. (Tr. 237-238). Dr. Michael Gustavel examined plaintiff on 9/2/08 and noted "significant neck pain and migraine headaches" dating back twelve years (Tr. 256). On 10/7/08, the plaintiff was seen by Dr. Vic Kadyan, who examined her and noted chronic neck, shoulder, and arm pain, paresthesias in her arm and fingers, and significant headaches, sometimes preventing her from getting out of bed, once for up to six days at a time. (Tr. 345). On 10/29/08, Dr. Swanson (plaintiff's regular family doctor for many years) again noted Plaintiff's constant pain and headaches. (Tr. 384). On 1/9/09, Dr. Kenneth Little examined Plaintiff and opined that her migraine headaches were interacting with her myofascial neck pain, with each making the other worse. (Tr. 263). Dr. Mary River examined Plaintiff on 4/17/09 and noted Plaintiff had been having chronic daily headaches with nausea for many years. (Tr. 278). Dr. River noted the headaches again on 6/12/09 and 9/4/09 and 12/8/09. (Tr. 270-277). On 10/8/09, Dr. Swanson noted Plaintiff continued to have headaches with vascular symptoms such as photophobia, nausea, and vomiting. (Tr. 330). Dr. Swanson did note some improvement in the frequency of her headaches during an exam on 1/11/10, but this proved only temporary. On 1/4/11, he noted that the Plaintiff's severe headaches had returned. (Tr. 333). Their continuation was noted by Dr. Rodde Cox when he examined the plaintiff on 2/7/11. (Tr. 348). The plaintiff was referred to psychological counseling with Dr. Robert Calhoun for seven sessions between 3/23/11 and 5/26/11 for relaxation exercises, biofeedback, and stress reduction aimed at treating her headaches. (Tr. 203-14). On 2/14/12, Dr. Holly Yancy examined the plaintiff at the Mayo Clinic

5 – OPINION AND ORDER

and noted her daily, unremitting headaches for years, with nausea, vomiting, diarrhea, photophobia, phonophobia, and osmophobia. (Tr. 405). She saw another Mayo Clinic doctor (Dr. Bert Vargas) on 2/14/12, who examined her and noted her chronic, unremitting headaches with nausea, vomiting, diarrhea, and osmophobia. (Tr. 412).

Based on her medical records dating back many years, it seems clear that the plaintiff has consistently reported the same symptoms to all her doctors. It is unclear how *more* consistent she could have been in reporting her symptoms during her course of treatment.

The ALJ further erred by rejecting and discrediting the plaintiff's own testimony without providing clear and convincing reasons for doing so. The plaintiff was never accused of malingering by any of her treating or examining or treating physicians, yet the ALJ thought her described symptoms were "inconsistent" because not *all* of her treating physicians made written note of the plaintiff reporting nausea and vomiting at *all* of her appointments. (Tr. 17-18). As the plaintiff argues and this Court agrees, to do so would have been unnecessary. Regardless, courts have found that credible excess pain testimony can exist without objective medical findings that support the existence of the degree of pain alleged. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989).

Similarly, the ALJ also erred by not crediting the testimony of the plaintiff's husband in regards to the husband's observations of plaintiff's pain and symptoms. The ALJ rejected the husband's testimony with a general finding of "inconsistency." (Tr.17-18). Such a blanket analysis is not legally sufficient to discredit the husband or plaintiff's testimony. Therefore both should be credited as a matter of law. *Schneider v. Commissioner of SSA*, 223 F.3d 968 (9th Cir. 2000).

Determining the credibility of lay witness testimony is in fact a separate and exclusive process of analysis from that of the plaintiff's own testimony. It cannot be rejected merely because it is cumulative of the plaintiff's testimony which was rejected. To illustrate this point in his analysis of *Molina v. Astrue*, 674 F.3d 1104,1114 (9th Cir. 2012), plaintiff's counsel presents a useful analogy worthy of incorporation in full here:

Example #2: The claimant testifies the moon is not made of cheese. The ALJ rejects the claimant's testimony as insufficient to establish the asserted fact, correctly noting that the claimant has never been to the moon, has never licked a moon rock to see if it tastes like cheese, and has never had the training it would take to do a proper analysis of the composition of the moon. (Note that the ALJ hasn't shown the moon is made of cheese; the ALJ has merely rejected the claimant's testimony as inadequate to prove that it isn't.) Neil Armstrong comes in as a lay witness and testifies that the moon is not made of cheese (which this Court may notice is the same factual assertion the claimant made, in testimony which the ALJ already has dismissed as insufficient to establish the fact). Armstrong supports his testimony by noting he once flew to the moon on a spacecraft, where he picked up several moon rocks, examined them carefully, and determined they were not made of cheese. Moreover (not on the spot, but later, after he had removed his pressurized helmet), he licked one of the rocks and it tasted like dust, not cheese. Lastly (or firstly), before agreeing to go to the moon, Armstrong insisted on meeting with a team of highly qualified astrophysicists who demonstrated to him that the moon is not made of cheese, which was important to Armstrong because he is deathly allergic to cheese and would not have agreed to go if the moon was made of cheese.

Citing *Molina*, can it be argued that Neil Armstrong's lay witness testimony must be rejected because the ALJ already rejected identical testimony (that the moon is not made of cheese) from the claimant? Of course not. The logical fallacy of doing so is clear.

If we do not distinguish between: a) rejecting testimony because it does not credibly establish a limitation; versus b) rejecting testimony because the facts show that the described limitation does not exist, well, then we are committing the kind of logical lapse that leads us to conclude that the moon is made of cheese! Plaintiff submits that, in rejecting the lay witness testimony herein, the ALJ committed precisely this kind of logical error. Even if the ALJ doesn't accept Plaintiff's own testimony, that doesn't give the ALJ license to reject the lay witness testimony which credibly described the same limitations.

Because the ALJ failed to credit the plaintiff's testimony or the testimony of her husband, the ALJ's Vocational Hypothetical put to the Vocational Expert (VE) was also in error, as it failed to account for all of the plaintiff's physical limitations and restrictions. See *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). At the 8/9/12 hearing, the VE did acknowledge however, that a person (such as the plaintiff) who would have to miss 3 days of work each month or a person who would need unscheduled breaks of 2 to 4 hours in duration approximately 3 times each week would be unable to sustain employment and thus would be disabled. (Tr. 60).

The Court has the option to remand for further administrative proceedings with an order to correct the deficiencies; or, if the court finds the record adequate to support a finding of disability without the need for further proceedings, to reverse and remand for payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (cert. denied, 531 U.S. 1038 (2000)); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1292 (1996). A remand for award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). A remand for award of benefits is also appropriate when a claimant would be disabled if the medical opinions and/or the claimant's testimony were credited, and no purpose would be served by remanding for further proceedings. In these instances, the reviewing Court may credit the improperly rejected opinions and testimonial evidence as true, reverse and remand for payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593, 594, 598 (9th Cir. 2009) (petition for en banc review denied, id. at 590); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

8 – OPINION AND ORDER

Here, the Court cannot see any useful purpose of ordering a remand.  The final decision of the Commissioner was not supported by substantial evidence and was not based on the application of proper legal standards, and the record is sufficiently developed to support a finding of disability warranting a remand for immediate payment of benefits.

## CONCLUSION

For these reasons, the Commissioner's decision is **REVERSED** and remanded for a finding of disabled and immediate payment of benefits.  IT IS SO ORDERED.

DATED this 31st day of October, 2014.


Michael J. McShane
United States District Judge

9 – OPINION AND ORDER